## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | **Bankruptcy No. 20-35493** |
| **1960 FAMILY PRACTICE PA,** | § | **Chapter 7** |
| *Debtor*; | § | |
| | § | |
| **EVA S. ENGELHART, CHAPTER 7** | § | |
| **TRUSTEE,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Adversary No. 22-03126** |
| | § | |
| **DOCTORS HOSPITAL 1997 LP d/b/a** | § | |
| **UNITED MEMORIAL MEDICAL** | § | |
| **CENTER,** | § | |
| *Defendants.* | § | |

---

### DEFENDANT'S AMENDED RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

TO THE HONORABLE EDUARDO V. RODRIGUEZ:

Pursuant to the Order of April 10, 2023 (ECF no. 47), Doctors Hospital 1997, L.P. d/b/a United Memorial Medical Center ("UMMC") amends its Response to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF no. 25) as set forth herein.

The Court should deny Plaintiff's motion for partial summary judgment and grant Defendant's motion for summary judgment for the reasons stated below:

### I.
### Introduction

1.      UMMC is a small community hospital located at 510 West Tidwell, Houston, Harris County, Texas. UMMC serves a community of blue-collar workers and their families in the near north side of Houston. UMMC struggles financially as does many of the small community

hospitals, many of which have closed their doors over the past several years. It is also struggling to resolve an issue with Medicare. Needless to say. UMMC does not have reserves available to pay a judgment the likes of which The Trustee and the Landlord are seeking.[1]

2.      UMMC's Motion for Summary Judgment should be granted, and the Trustee's Motion for Partial Summary Judgment should be denied for the following reasons:

    a.  The Debtor expressly warranted and represented to UMMC the APA that no consent on the part of the landlord was required in order to transfer the leasehold estates in question to UMMC;

    b.  The lease agreements in question between the landlord and the Debtor require the written consent of the landlord before the Debtor has the right to transfer the leasehold estates in question to UMMC;

    c.  No summary judgment has been offered by the Trustee or the landlord or the Debtor that such written consent was ever given by the landlord**;**

    d.  The summary judgment evidence is uncontested that UMMC made demand on the Debtor to provide the required written consent of the landlord, but, notwithstanding a further assurances clause in the APA, no such consent was provided by the Debtor, so UMMC declined to pay any further rent beyond the first two payments.; and

    e.  Upon execution of the APA, the Debtor breached its warranty and representation in the APA no consent of the landlord was required in order to transfer the leasehold estates to UMMC, and this "first breach" excused further performance by UMMC.[2]

3.      It is also uncontested that neither the landlord nor the Debtor made any demand for payment of the rent until a year after the leasehold estates in question reached the end of their terms in September 2020.[3]

---

[1] This paragraph originally appears in ECF no. 25, ¶ 2.

[2] This paragraph originally appears in ECF no. 25, ¶ 3.

[3] This paragraph originally appears as the first sentence of ECF no. 25, ¶ 4.

4.      Finally, there is no assertion by the Trustee that the APA is ambiguous. There is a good "entireties" clause in the agreement. Thus, it is up to the Court to interpret the APA by looking to the "four corners" of the document, and without considering parol evidence.[4]

5.      Alternatively, the Trustee only owns 30 percent of the Trustee's claim against UMMC. The balance of the claim and cause of action is owned by the landlord, who is not a named party in the Adversary Proceeding, nor is there any indication in the Trustee's live pleading that the Trustee is pursuing its 30 percent of the claim and cause of action against UMMC as well as the landlord's 70 percent.[5]

## II.
## Response to Trustee's Statement of Facts Regarding Venue, Jurisdiction, and the Parties to this Adversary Proceeding

1.      UMMC admits the facts in Paragraph 1 of Trustee's Motion.

2.      UMMC admits the facts in Paragraph 2 of Trustee's Motion.

3.      UMMC admits the facts in Paragraph 3 of Trustee's Motion.

4.      UMMC admits the facts in Paragraph 4 of Trustee's Motion. To be clear, this admission constitutes no admission as to the summary judgment evidence referenced in the table following Paragraph 4.

5.      UMMC admits the facts in Paragraph 5 of Trustee's Motion.

6.      UMMC admits the facts in Paragraph 6 of Trustee's Motion.

## III.
## Response to Trustee's Statement of Undisputed Facts

1.      UMMC admits the facts in Paragraph 1 of Trustee's Motion.

---

[4] This paragraph originally appears in ECF no. 25, ¶ 5.

[5] This paragraph originally appears in ECF no. 25, ¶ 6.

2.      UMMC admits the facts in Paragraph 2 of Trustee's Motion.

3.      UMMC admits the facts in Paragraph 3 of Trustee's Motion.

4.      UMMC admits the facts in Paragraph 4 of Trustee's Motion.

5.      UMMC admits the facts in Paragraph 5 of Trustee's Motion.

6.      UMMC denies the in the first sentence of Paragraph 6 of Trustee's Motion as it is the Trustee's conclusion about the excerpted testimony. In all other respects, UMMC admits the facts in Paragraph 6 of Trustee's Motion.

7.      UMMC admits the facts in Paragraph 7 of Trustee's Motion.

8.      UMMC admits the facts in Paragraph 8 of Trustee's Motion.

9.      UMMC admits the facts in Paragraph 9 of Trustee's Motion.

10.     UMMC admits the facts in Paragraph 10 of Trustee's Motion.

11.     UMMC admits the facts in Paragraph 11 of Trustee's Motion.

12.     UMMC admits the facts in Paragraph 12 of Trustee's Motion.

13.     UMMC admits the facts in Paragraph 13 of Trustee's Motion.

14.     UMMC admits the facts in Paragraph 14 of Trustee's Motion.

15.     UMMC admits the facts in Paragraph 15 of Trustee's Motion.

16.     UMMC admits the facts in Paragraph 16 of Trustee's Motion.

17.     UMMC admits the facts in Paragraph 17 of Trustee's Motion.

18.     UMMC admits the facts in Paragraph 18 of Trustee's Motion.

19.     UMMC admits the facts in Paragraph 19 of Trustee's Motion.

20.     UMMC admits the facts in Paragraph 20 of Trustee's Motion.

21.     UMMC admits the facts in Paragraph 21 of Trustee's Motion.

22.     UMMC admits the facts in Paragraph 22 of Trustee's Motion.

23.     UMMC denies the facts in Paragraph 23 of Trustee's Motion. As explained further herein, provisions of the underlying leases pertaining to the necessity of the landlord's consent to assign or sublease the premises and warranties contained within the APA place conditions on UMMC's obligation to pay Debtor's lease obligations (Ex. 1–5).

24.     UMMC denies the facts in Paragraph 24 of Trustee's Motion. As explained further herein, provisions of the underlying leases pertaining to the necessity of the landlord's consent to assign or sublease the premises and warranties contained within the APA place conditions on UMMC's obligation to pay Debtor's lease obligations (Ex. 1–5).

25.     UMMC admits the facts in Paragraph 25 of Trustee's Motion.

26.     UMMC denies the facts in Paragraph 26 of Trustee's Motion. The Declaration of Ravishanker Mallapuram states in relevant part, "UMMC made several attempts to obtain from the Debtor the consents required by the Landlord in paragraph 32 of each of the Leases. Debtor never delivered to UMMC the required consents." (Ex. 16).

27.     UMMC admits the facts in Paragraph 27 of Trustee's Motion.

28.     UMMC admits the facts in Paragraph 28 of Trustee's Motion.

29.     UMMC admits the facts in Paragraph 29 of Trustee's Motion.

30.     UMMC admits the facts in Paragraph 30 of Trustee's Motion.

31.     UMMC admits the facts in Paragraph 31 of Trustee's Motion.

32.     UMMC admits the facts in Paragraph 32 of Trustee's Motion.

33.     UMMC admits the facts in Paragraph 33 of Trustee's Motion.

34.     UMMC admits the facts in Paragraph 34 of Trustee's Motion.

35.     UMMC admits the facts in Paragraph 35 of Trustee's Motion.

36.     UMMC admits the facts in Paragraph 36 of Trustee's Motion.

37.    UMMC admits the facts in Paragraph 37 of Trustee's Motion.

38.    UMMC admits the facts in Paragraph 38 of Trustee's Motion.

39.    UMMC admits the facts in Paragraph 39 of Trustee's Motion.

40.    UMMC admits the facts in Paragraph 40 of Trustee's Motion.

41.    UMMC admits the facts in Paragraph 41 of Trustee's Motion.

42.    UMMC admits the facts in Paragraph 42 of Trustee's Motion.

**IV.**
**Additional Facts**

**A.    December 1, 2010 – The First Lease is Signed by the Debtor and Landlord**

43.    On December 1, 2010, 1960 the, Debtor, as tenant, entered into an office lease agreement with Cypress MOB, LLC. WFMC 2016-C34 Northwest Freeway, LLC alleges that it is the is the successor in interest to Cypress MOB, LLC. For purposes of this Response well be referred to as the "Landlord". The lease was for two office suits, 500 and 550 located at 20320 Northwest Freeway, Houston, TX 77065 (the "First Lease"). The First Lease was subsequently amended and extended the lease term to September 1, 2020. A true and correct copy of the First Lease and the amendment thereto are attached as **Exhibits "1" and "2"**.[6]

44.    The First Lease required the Landlord to consent in writing to any sort of transfer of the leasehold estate to any third party. Section 32 of each of the Leases, provides:

32.    Assignment by Tenant.

A.    Tenant shall not, without Landlord's prior written consent in each instance in accordance with Section 33(C), convey, assign or encumber this Lease or any interest herein, directly or indirectly, voluntarily or by operation of law, including the merger or consolidation of Tenant with or into another entity, or sublet all or

---

[6] This paragraph originally appears in ECF no. 25, ¶ 7.

any portion of the Premises, or permit the use or occupancy of any part of the Premises by anyone other than Tenant (collectively, "Transfer").[7]

**B.      October 22, 2012 – The Second First Lease is Signed by the Debtor and Landlord**

45.      On October 22, 2012, the Debtor, as tenant, also entered into an office lease agreement with Cypress MOB covering suites 800 and 900 at 20320 Northwest Freeway, Houston, Texas 77065 (the "Second Lease"). The Second Lease was subsequently amended and extended the lease term to September 1, 2020, with a monthly payment of rent in the amount of $31,647.20. A true and correct copy of the First Lease and the amendment thereto are attached as **Exhibits "3" and "4"**. Both leases are collectively referred to as (the "Leases").[8]

46.      WFMC 2016-C34 NORTHWEST FREEWAY, LLC is the successor in interest to Cypress MOB, LLC, and will be referred to herein as the "Landlord".[9]

47.      The Second Lease required the Landlord to consent in writing to any sort of transfer of the leasehold estate to any third party Section 32 of each of the Leases, provides:

32.      <u>Assignment by Tenant</u>.

A.      Tenant shall not, without Landlord's prior written consent in each instance in accordance with Section 33(C), convey, assign or encumber this Lease or any interest herein, directly or indirectly, voluntarily or by operation of law, including the merger or consolidation of Tenant with or into another entity, or sublet all or any portion of the Premises, or permit the use or occupancy of any part of the Premises by anyone other than Tenant (collectively, "Transfer").[10]

---

[7] This paragraph originally appears in ECF no. 25, ¶ 8.

[8] This paragraph originally appears in ECF no. 25, ¶ 9.

[9] This paragraph originally appears in ECF no. 25, ¶ 10.

[10] This paragraph originally appears in ECF no. 25, ¶ 11.

48.     The Landlord never provided such consent, orally or in writing. As to the First

Lease, UMMC never occupied the leasehold apace. As alleged and admitted by the Trustee,

UMMC did make two payments under the Leases in September and October 2019.[11]

## C.     September 1, 2019 – The effective date of the Asset Purchase Agreement Between the Debtor and UMMC

49.     Pursuant to the APA between the Debtor, as Seller, and UMMC, as Purchaser, dated

August 16, 2019 (the "APA"), UMMC purchased the Debtor's medical practice and assets associ-

ated therewith (the "Assets"). (Ex. 5).[12]

50.     Several provisions of the APA are critical in order for the Court to analyze this case

properly. First, in section 2.1 of the APA, the parties defined the assets Debtor agreed to sell to

UMMC, as follows:

> **2.1 Purchase of Assets.** Subject to the terms and conditions contained in this Agree-
> ment, at Closing Seller will sell, convey, assign, transfer and deliver to Purchaser
> <u>all of the Seller's property and assets, wherever located and utilized in the Practice</u>,
> in each case as the same exists on the Closing Date, including, but not limited to
> the following (collectively, the "Assets"):
>
> . . .
>
> b. all commitments, contracts, agreements, <u>operating leases,</u> lease purchase
> arrangements and license agreements in respect of the Practice (collectively, the
> "Assumed Contracts").[13]

51.     The second, provision of importance is Section 2.3 of the APA. The Trustee alleges

that UMMC assumed and agreed to satisfy the Debtor's liabilities incurred after the Closing Date,

September 1, 2019, as follows:

> **2.3     Assumption of Certain Liabilities of Seller.**

---

[11] This paragraph originally appears in ECF no. 25, ¶ 12.

[12] This paragraph originally appears in ECF no. 25, ¶ 13.

[13] This paragraph originally appears in ECF no. 25, ¶ 14.

**(a)**  Purchaser agrees to pay and satisfy all Liabilities of Practices incurred after the Closing Date. Purchaser is not responsible for Sellers Liabilities prior to the Closing Date.

**(b)**  Notwithstanding the foregoing, at Closing, Purchaser will assume and agree to satisfy the liabilities, including (collectively, the "Assumed Liabilities"):

. . .

(ii)  buyer agrees to sign a lease or sublease for all Practice Locations. Purchaser agrees to comply with the terms of the Master/Prime Lease for each Location and shall execute a personal guaranty for payment of said leases.[14]

52.    As is obvious, Section 2.3(a), overrides Section 2.3(b)(ii), which contemplates that UMMC will execute a lease or sublease with respect to each practice location. It is undisputed that, no lease or sublease for the two leasehold estates in question was ever consented to by the Landlord and provided to UMMC for execution.[15]

53.    The next section of the APA of critical importance is Section 4.2(b), where the Debtor made the following representation and warranty to UMMC:

**4.2    Consents; Absence of Conflicts with Other Agreements, Etc.** The execution, delivery and performance by Seller of the Agreement hereby: (a) will not conflict with any provision of Seller's organizational documents; (b) ***will not violate, conflict with or constitute on the part of Seller a breach of or a default under, or require approval or consent of any Person under, any Law, Governmental Authorization, material contract, agreement, indenture, mortgage or lease to which Seller, the Practice, or any of the Assets may be subject***; and (c) will not create any Encumbrance on any of the Assets.

(emphasis added).[16]

54.    It is undisputed that each of the Leases required the consent of the Landlord before a sublease or new lease between the Debtor and UMMC could be effective. The Landlord never gave its consent. Indeed, as is obvious from the following evidence, the Landlord knew nothing

---

[14] This paragraph originally appears in ECF no. 25, ¶ 15.

[15] This paragraph originally appears in ECF no. 25, ¶ 16.

[16] This paragraph originally appears in ECF no. 25, ¶ 17.

about the existence of UMMC or the APA until September 2021, a year after the Leases expired in

September 2020. This caused a breach of the Debtor's warranty in Section 4.2(b) of the APA.[17]

55.    The Court should construe the APA consistent with the "entireties" clause found in

Section 13.9 of the APA, as follows:

> **13.9    Entire Agreement; Amendment.** This Agreement together with any other
> agreements expressly contemplated hereby supersede all previous agreements
> (except for the Confidentiality Agreement, which shall continue to be in effect) and
> constitute the entire agreement of whatsoever kind or nature existing among the
> parties representing the within subject matter, between Seller and Purchaser, and no
> party will be entitled to benefits other than those specified herein and therein. The
> parties specifically acknowledge that in entering into and executing this Agreement
> and any other agreements specifically referenced herein or therein, the parties rely
> solely upon the representations and agreements contained herein and therein and
> no others. All prior representations or agreements, whether written or oral, not
> expressly referenced herein are superseded unless and until made in writing and
> signed by the party sought to be charged therewith. This Agreement may be
> amended, and the terms hereof may be modified, only by a writing executed by
> each party hereto. and any matter referred to herein as mutually agreed to or
> designated by the parties must be evidenced by such a writing.[18]

## D.    December 19, 2019 – The Landlord's First Demand Letter

56.    On December 19, 2019, the Landlord sent its first demand letter—only to the

Debtor—and not UMMC (Ex. 6).[19]

## E.    March 12, 2020 – The Landlord's Second Demand Letter

57.    On March 12, 2020, the Landlord sent a second demand letter, this time to the

Debtor and the guarantors of the Leases—but not UMMC (Ex. 7).[20]

---

[17] This paragraph originally appears in ECF no. 25, ¶ 18.

[18] This paragraph originally appears in ECF no. 25, ¶ 19.

[19] This paragraph originally appears in ECF no. 25, ¶ 21.

[20] This paragraph originally appears in ECF no. 25, ¶ 22.

**F.      May 4, 2020 – The Landlord Files the State Court Proceeding**

58.      On or about May 4, 2020, the Landlord filed a lawsuit in the 295th District Court in Harris County, Texas against the Debtor, as tenant under the Leases, and several guarantors (the "State Court Proceeding"). Notwithstanding that the Landlord claims that UMMC assumed the Debtor's lease obligation to pay rent under the Leases, the Landlord did not join UMMC as a defendant (Ex. 8).[21]

**G.      September 23, 2021 – The Landlord Makes Demand Upon UMMC**

59.      Over a year after filing a lawsuit and after the Debtor filed for bankruptcy, the Landlord made demand upon UMMC, for the first time on September 23, 2021 (Ex. 9).[22]

**H.      October 8, 2021 – The Landlord Joins UMMC in the State Court Proceeding**

60.      On October 8, 2021, the Landlord filed a First Amended Petition in the State Court Proceeding, dropping the Debtor as a defendant, and adding UMMC as a defendant (Ex. 10).[23]

61.      The Landlord pled two causes of action against UMMC: (1) breach of contract and (2) quantum meruit, asserting that UMMC occupied one, or both. leasehold premises. UMMC was not a direct obligor under the Leases, nor was UMMC a guarantor. No document exists where UMMC and the Landlord signed any type of lease, sublease or assignment. Moreover, UMMC never occupied either of the leasehold premises. Further, the Landlord was not a party to the APA,

---

[21] This paragraph originally appears in ECF no. 25, ¶ 23.

[22] This paragraph originally appears in ECF no. 25, ¶ 24.

[23] On or about November 11, 2020, a Suggestion of Bankruptcy was filed in the State Court Proceeding on behalf of Debtor. Subsequently, the Landlord moved to sever the non-Debtor defendants into a separate case in the State Court Proceeding, the case against the Debtor was dismissed for want of prosecution, and the case against the non-Debtor defendants was temporarily stayed as to all non-Debtor Defendants pending further Order from this Court.

This paragraph and the above footnote originally appear in ECF no. 25, ¶ 25.

nor could the Landlord claim that it was a third-party beneficiary, since the APA precluded the assertion of third party beneficiary rights.[24]

## I.      March 3, 2022 – The Trustee and Landlord Execute a Sale Agreement

62.     On or about March 3, 2022, the Trustee and Landlord signed a Sale Agreement (Ex. 11). The Sale Agreement contemplated that the Landlord and the Trustee would transfer their respective claims and causes to each other in certain percentage amounts set forth in Paragraph 1 of the Sale Agreement, as follows:

> ***It is the intention of this Sale Agreement to transfer interests in each cause of action to the other*** in order to combine the efforts of the parties to prosecute the claims and to share in any recovery, with the combined recovery by the estate and by WFMC 2016 C-34 Northwest Freeway, LLC as successor in interest to Cypress MOB, LLC to be split among the parties 70/30, with WFMC receiving 70% and the estate receiving 30% of any recovery received by either the Trustee or WFMC. By way of example, should the Trustee receive $1 million from any party for the resolution of the Direct Claims (whether through litigation or settlement), then WFMC would be entitled to receive a total of $700,000.00 and the estate would receive the remaining $300,000.00. Likewise, if WFMC were to receive $1 million from any party to settle the Direct Claims, WFMC would immediately turnover $300,000.00 to the bankruptcy estate.

(emphasis added).[25]

63.     The Sale Agreement was approved by order of the Court on April 5, 2022 (Ex. 12). After these cross-assignments occurred, the Trustee was left with only 30 percent of the claims and causes of action asserted in this Adversary Proceeding.[26]

## J.      April 22, 2022 – Trustee Files This Adversary Proceeding

64.     The Trustee filed the above-captioned Adversary Proceeding on April 25, 2022 (Ex. 13). The cross-sale of claims and causes of action set forth in the Sale Agreement were not

---

[24] This paragraph originally appears in ECF no. 25, ¶ 26.

[25] This paragraph originally appears in ECF no. 25, ¶ 27.

[26] This paragraph originally appears in ECF no. 25, ¶ 28.

mentioned in the Complaint. Thus, on its face, the Trustee is only pursuing against UMMC in the Adversary Proceeding the Trustee's remaining 30 percent. That is all it owned when the Adversary Proceeding was filed. The Landlord is not a party to the Adversary Proceeding nor are any of the 30 percent of the Landlord's claims and causes of action transferred to the Trustee asserted by the Trustee in the Adversary Proceeding.[27]

**K.      January 17, 2023 – Agreed Order Settling UMMC's Objection to Landlord's Claim**

65.      The Landlord filed a proof of claim which was objected to by UMMC. Before the matter was heard, the parties entered an Agreed Order which was entered by the Court on January 17, 2023 (Ex. 14). A true and correct copy of the Agreed Order is attached as Exhibit "14". The Agreed Order only dealt with the amount and merits of the Landlord's claim against the Debtor, apart from the affirmative defenses raised by UMMC in its answer in the Adversary Proceeding (Ex. 15). Thus, as to the amount and merits of the Landlord's claim against the Debtor, UMMC retained its "failure to mitigate" and "impossibility of performance" defenses.[28]

66.      In its Answer, UMMC denied in all material respects the allegations made in breach of contract cause of action and the declaratory judgment cause of action and asserted three affirmative defenses: (a) Mistake; (b) Failure to Mitigate Damages; and (c) Impossibility of Performance.[29]

67.      The following are no evidence points as to where UMMC has offered some evidence and the Trustee has offered no controverting summary judgment evidence.

a.   The APA was dated September 1, 2019. The Leases expired one year later in September 2020.

---

[27] This paragraph originally appears in ECF no. 25, ¶ 29.

[28] This paragraph originally appears in ECF no. 25, ¶ 30.

[29] This paragraph originally appears in ECF no. 25, ¶ 31.

b.  UMMC made the first two payments for Rent due in September and October 2019. UMMC made no further payments.

c.  The Landlord made to demands for the payment of rent during the lease term and filed a lawsuit during the lease term, but no demand was made on UMMC, nor was UMMC joined as a defendant in the Landlord's lawsuit. The Landlord made no demand upon UMMC for payment of rent under the Leases until September 2021, a year after the lease term ended.

d.  The Debtor mad no demand upon UMMC for payment of rent during the lease term, and there is no evidence that a demand was made until the Trustee filed this Adversary Proceeding in May 2022.

e.  UMMC made several demands upon the Debtor for the Landlord's written consent to the transfer of the Leasehold estates to UMMC. *See p*aragraph 4 of the Mallapuram as Declaration attached hereto as, **Exhibit "16"** and incorporated herein by reference for all purposes. This declaration was attached to UMMC's SJM as **Exhibit "A"**.

f.  The Debtor failed to vacate the leasehold estates covered in one or both Leases. Thus, UMMC was prevented from occupying the leasehold premises. The leased premises continued to be occupied by the Debtor, or entities affiliated with the Debtor, as business offices. *See p*aragraph 5 of the Mallapuram as Declaration attached hereto as, **Exhibit "16"**.

g.  UMMC did make two payments under the Leases at the request of the Debtor; however, UMMC made no further payments. UMMC was ready, willing, and able to make the required payments under the Lease, but it did not do so because the Debtor breached the APA by failing to provide the written consents required under each of the two Leases, and because the Debtor failed to vacate the premises. *See p*aragraph 6 of the Mallapuram as Declaration attached hereto as, **Exhibit "16"**.

h.  The Landlord made no demand upon UMMC to occupy the leasehold estates or to pay rent under the Leases until a year after

i.  There is no evidence that the Landlord or the Trustee ever issued or delivered to UMMC and/or the Debtor written consent to the transfer of the leasehold estates to UMMC, as is required by paragraph 32 of each Lease Agreement.

j.  Neither the Landlord nor the Debtor ever provided to UMMC written consent for the transfer to leasehold estates to UMMC. [30]

---

[30] This paragraph originally appears in ECF no. 25, ¶ 32.

## IV.
## Argument and Authorities

### A.      Construction of the APA

68.      The entireties clause of the APA precludes the introduction of parol evidence where there is no allegation that the document or a term thereof is ambiguous. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 369 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *see also DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999) (when a count determines the terms of a contract are unambiguous, the court must interpret the terms of the contract as a matter of law). The Court should look to the "four corners of the APA" in order to interpret and enforce the APA.[31]

### B.      Third Party Beneficiary Law Precludes Recovery by Trustee

69.      This intent requirement in a third-party beneficiary contract is an essential element. *See Brumitt*, 519 S.W.3d at 102; *see also Stine*, 80 S.W.3d at 589 (intent can only be inferred by examining the entire contract to give effect to all its provisions so none are rendered meaningless).[32]

70.      There are no third-party beneficiary rights that the Trustee or the Landlord can assert in this case because the APA provided for no such rights, as follows:

> **13.6    No Rights in Third Parties.** Nothing contained in this Agreement will be construed as giving rise to any right to enforce its provisions to any Person not a party to this Agreement under any legal theory.[33]

---

[31] This paragraph originally appears in ECF no. 25, ¶ 34.

[32] This paragraph originally appears in ECF no. 25, ¶ 39.

[33] This paragraph originally appears in ECF no. 25, ¶ 40.

71.     Thus, while it is true that UMMC is estopped by the Order (Ex. 14) from challenging the amount or merits of the Landlord's allowed claim against Debtor's bankruptcy estate, UMMC is not estopped from challenging its liability for such allowed claim.[34]

## C.     Impossibility of Performance

72.     It was impossible for UMMC to perform under the APA by occupying the leasehold estates because it lacked the authority to do so. Neither the Landlord nor the Debtor obtained the necessary written consents authorizing the Debtor to assign the Leases to UMMC.[35]

## D.     Trustee's Damages are Limited to 30% of the Allowed Claim of the Landlord

73.     Paragraph 67, *supra*, sets forth the facts relating to the cross-sale and assignment of claims and causes of action owned by the Trustee and the Landlord. The Trustee only owns 30 percent of its claims and causes of action and 30 percent of the Landlord's claims and causes of action. Therefore, the most that the Trustee may recover in the Adversary Proceeding is 30 percent of the allowed claim of the Landlord in the Debtor's bankruptcy proceeding, $950,000.00. This is the amount that was allowed in the Agreed Order (Ex. 14).[36]

WHEREFORE, premises considered, Doctors Hospital 1997 LP d/b/a United Memorial Medical Center respectfully requests that the Court grant UMMC's Motion for Summary Judgment, deny the Trustee's Motion for Partial Summary Judgment, and Defendant all such further relief which is just.

Respectfully Submitted,

**PENDERGRAFT & SIMON, LLP**

---

[34] This paragraph originally appears in ECF no. 25, ¶ 41.

[35] This paragraph originally appears in ECF no. 25, ¶ 42.

[36] This paragraph originally appears in ECF no. 25, ¶ 43.

/s/ *Leonard H. Simon*
Leonard H. Simon
  Texas Bar No. 18387400
  S.D. Tex. Adm. No. 8200
William P. Haddock
  Texas Bar No. 00793875
  S.D. Tex. Adm. No. 19637
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Doctors Hospital 1997 LP d/b/a*
*United Memorial Medical Center*

## Certificate of Service

I hereby certify that a true and correct copy of the above Defendant's Amended Response to Plaintiff's Motion for Partial Summary Judgment has been served on the following counsel/parties of record in accordance with the Fed. R. Bankr. P. 7005 and local rules for ECF service on this 13th day of April, 2023:

Counsel/parties appearing electronically via ECF:

Miriam Goot, Counsel for Plaintiff

/s/ *Leonard H. Simon*
Leonard H. Simon