IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re<br>**1960 FAMILY PRACTICE PA,**<br>  *Debtor*;<br><br>**EVA S. ENGELHART, CHAPTER 7 TRUSTEE,**<br>  *Plaintiff*,<br><br>v.<br><br>**DOCTORS HOSPITAL 1997 LP d/b/a UNITED MEMORIAL MEDICAL CENTER,**<br>  *Defendants*. | §§§§§§§§§§§§§§§§ | Bankruptcy No. 20-35493<br>Chapter 7<br><br><br><br><br><br>Adversary No. 22-03126 |

**DEFENDANT'S AMENDED REPLY TO TRUSTEE'S RESPONSE TO UMMC'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE EDUARDO V. RODRIGUEZ:

Pursuant to the Order of April 10, 2023 (ECF no. 47), Doctors Hospital 1997, L.P. d/b/a United Memorial Medical Center ("UMMC") amends its Response to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF no. 25) as set forth herein.

The Court should deny Plaintiff's motion for partial summary judgment and grant Defendant's motion for summary judgment for the reasons stated below:

**I.
Introduction**

1.      UMMC is a small community hospital located at 510 West Tidwell, Houston, Harris County, Texas. UMMC serves a community of blue-collar workers and their families in the near north side of Houston. UMMC struggles financially as does many of the small community

hospitals, many of which have closed their doors over the past several years. It is also struggling to resolve an issue with Medicare. Needless to say. UMMC does not have reserves available to pay a judgment the likes of which The Trustee and the Landlord are seeking.[1]

2. UMMC's Motion for Summary Judgment should be granted, and the Trustee's Motion for Partial Summary Judgment should be denied for the following reasons:

   a. The Debtor expressly warranted and represented to UMMC the APA that no consent on the part of the landlord was required in order to transfer the leasehold estates in question to UMMC;

   b. The lease agreements in question between the landlord and the Debtor require the written consent of the landlord before the Debtor has the right to transfer the leasehold estates in question to UMMC;

   c. No summary judgment has been offered by the Trustee or the landlord or the Debtor that such written consent was ever given by the landlord;

   d. The summary judgment evidence is uncontested that UMMC made demand on the Debtor to provide the required written consent of the landlord, but, notwithstanding a further assurances clause in the APA, no such consent was provided by the Debtor, so UMMC declined to pay any further rent beyond the first two payments.; and

   e. Upon execution of the APA, the Debtor breached its warranty and representation in the APA no consent of the landlord was required in order to transfer the leasehold estates to UMMC, and this "first breach" excused further performance by UMMC.[2]

3. It is also uncontested that neither the landlord nor the Debtor made any demand for payment of the rent until a year after the leasehold estates in question reached the end of their terms in September 2020.[3]

---

[1] This paragraph originally appears in ECF no. 25, ¶ 2.

[2] This paragraph originally appears in ECF no. 25, ¶ 3.

[3] This paragraph originally appears as the first sentence of ECF no. 25, ¶ 4.

4. Finally, there is no assertion by the Trustee that the APA is ambiguous. There is a good "entireties" clause in the agreement. Thus, it is up to the Court to interpret the APA by looking to the "four corners" of the document, and without considering parol evidence.[4]

5. Alternatively, the Trustee only owns 30 percent of the Trustee's claim against UMMC. The balance of the claim and cause of action is owned by the landlord, who is not a named party in the Adversary Proceeding, nor is there any indication in the Trustee's live pleading that the Trustee is pursuing its 30 percent of the claim and cause of action against UMMC as well as the landlord's 70 percent.[5]

## II.
## Reply

1. On December 1, 2010, 1960 the, Debtor, as tenant, entered into an office lease agreement with Cypress MOB, LLC. WFMC 2016-C34 Northwest Freeway, LLC alleges that it is the is the successor in interest to Cypress MOB, LLC. For purposes of this Response well be referred to as the "Landlord". The lease was for two office suits, 500 and 550 located at 20320 Northwest Freeway, Houston, TX 77065 (the "First Lease"). The First Lease was subsequently amended and extended the lease term to September 1, 2020. (ECF nos. 49-1, 49-2).[6]

2. The First Lease required the Landlord to consent in writing to any sort of transfer of the leasehold estate to any third party. Section 32 of each of the Leases, provides:

> 32. <u>Assignment by Tenant</u>.
>
> A. Tenant shall not, without Landlord's prior written consent in each instance in accordance with Section 33(C), convey, assign or encumber this Lease or any interest herein, directly or indirectly, voluntarily or by operation of law, including the merger or consolidation of Tenant with or into another entity, or sublet all or

---

[4] This paragraph originally appears in ECF no. 25, ¶ 5.

[5] This paragraph originally appears in ECF no. 25, ¶ 6.

[6] This paragraph originally appears in ECF no. 25, ¶ 7.

any portion of the Premises, or permit the use or occupancy of any part of the Premises by anyone other than Tenant (collectively, "Transfer").[7]

3.  On October 22, 2012, the Debtor, as tenant, also entered into an office lease agreement with Cypress MOB covering suites 800 and 900 at 20320 Northwest Freeway, Houston, Texas 77065 (the "Second Lease"). The Second Lease was subsequently amended and extended the lease term to September 1, 2020, with a monthly payment of rent in the amount of $31,647.20 (ECF nos. 49-3, 49-4).[8]

4.  WFMC 2016-C34 NORTHWEST FREEWAY, LLC is the successor in interest to Cypress MOB, LLC, and will be referred to herein as the "Landlord".[9]

5.  The Second Lease required the Landlord to consent in writing to any sort of transfer of the leasehold estate to any third party Section 32 of each of the Leases, provides:

> 32.  Assignment by Tenant.
>
> A.  Tenant shall not, without Landlord's prior written consent in each instance in accordance with Section 33(C), convey, assign or encumber this Lease or any interest herein, directly or indirectly, voluntarily or by operation of law, including the merger or consolidation of Tenant with or into another entity, or sublet all or any portion of the Premises, or permit the use or occupancy of any part of the Premises by anyone other than Tenant (collectively, "Transfer").[10]

6.  Several provisions of the APA are critical in order for the Court to analyze this case properly. Of particular importance is Section 2.3 of the APA. The Trustee alleges that UMMC assumed and agreed to satisfy the Debtor's liabilities incurred after the Closing Date, September 1, 2019, as follows:

> **2.3 Assumption of Certain Liabilities of Seller.**

---

[7] This paragraph originally appears in ECF no. 25, ¶ 8.

[8] This paragraph originally appears in ECF no. 25, ¶ 9.

[9] This paragraph originally appears in ECF no. 25, ¶ 10.

[10] This paragraph originally appears in ECF no. 25, ¶ 11.

**(a)** <u>Purchaser agrees to pay and satisfy all Liabilities of Practices incurred after the Closing Date.</u> Purchaser is not responsible for Sellers Liabilities prior to the Closing Date.

**(b)** <u>Notwithstanding the foregoing</u>, at Closing, Purchaser will assume and agree to satisfy the liabilities, including (collectively, the "Assumed Liabilities"):

. . .

(ii) <u>buyer agrees to sign a lease or sublease for all Practice Locations.</u> Purchaser agrees to comply with the terms of the Master/Prime Lease for each Location and shall execute a personal guaranty for payment of said leases.[11]

7. As is obvious, Section 2.3(a), overrides Section 2.3(b)(ii), which contemplates that UMMC will execute a lease or sublease with respect to each practice location. It is undisputed that, no lease or sublease for the two leasehold estates in question was ever consented to by the Landlord and provided to UMMC for execution.[12]

8. The next section of the APA of critical importance is Section 4.2(b), where the Debtor made the following representation and warranty to UMMC:

**4.2    Consents; Absence of Conflicts with Other Agreements, Etc.** The execution, delivery and performance by Seller of the Agreement hereby: (a) will not conflict with any provision of Seller's organizational documents; (b) ***will not violate, conflict with or constitute on the part of Seller a breach of or a default under, or require approval or consent of any Person under, any Law, Governmental Authorization, material contract, agreement, indenture, mortgage or lease to which Seller, the Practice, or any of the Assets may be subject***; and (c) will not create any Encumbrance on any of the Assets.

(emphasis added).[13]

9. It is undisputed that each of the Leases required the consent of the Landlord before a sublease or new lease between the Debtor and UMMC could be effective. The Landlord never gave its consent. Indeed, as is obvious from the following evidence, the Landlord knew nothing

---

[11] This paragraph originally appears in ECF no. 25, ¶ 15.

[12] This paragraph originally appears in ECF no. 25, ¶ 16.

[13] This paragraph originally appears in ECF no. 25, ¶ 17.

about the existence of UMMC or the APA until September 2021, a year after the Leases expired in September 2020. This caused a breach of the Debtor's warranty in Section 4.2(b) of the APA.[14]

10. The following are no evidence points as to where UMMC has offered some evidence and the Trustee has offered no controverting summary judgment evidence.

   a. UMMC made several demands upon the Debtor for the Landlord's written consent to the transfer of the Leasehold estates to UMMC. *See p*aragraph 4 of the Mallapuram as Declaration attached at ECF no. 49-2 and incorporated herein by reference for all purposes. This declaration was attached to UMMC's SJM as Exhibit "A".

   b. The Debtor failed to vacate the leasehold estates covered in one or both Leases. Thus, UMMC was prevented from occupying the leasehold premises. The leased premises continued to be occupied by the Debtor, or entities affiliated with the Debtor, as business offices. *See p*aragraph 5 of the Mallapuram as Declaration at ECF-49-16.

   c. UMMC did make two payments under the Leases at the request of the Debtor; however, UMMC made no further payments. UMMC was ready, willing, and able to make the required payments under the Lease, but it did not do so because the Debtor breached the APA by failing to provide the written consents required under each of the two Leases, and because the Debtor failed to vacate the premises. *See p*aragraph 6 of the Mallapuram as Declaration attached at ECF no. 49-16.

   d. The Landlord made no demand upon UMMC to occupy the leasehold estates or to pay rent under the Leases until a year after

   e. There is no evidence that the Landlord or the Trustee ever issued or delivered to UMMC and/or the Debtor written consent to the transfer of the leasehold estates to UMMC, as is required by paragraph 32 of each Lease Agreement.

   f. Neither the Landlord nor the Debtor ever provided to UMMC written consent for the transfer to leasehold estates to UMMC.[15]

11. It was impossible for UMMC to perform under the APA and under the Leases for two reasons. First, Neither the Landlord nor the Debtor obtained the necessary written consents

---

[14] This paragraph originally appears in ECF no. 25, ¶ 18.

[15] This paragraph originally appears in ECF no. 25, ¶ 32.

authorizing the Debtor to assign the Leases to UMMC. Second, the Debtor continued to occupy the premises covered by the two leases thus making it impossible for UMMC to occupy such premises and perform thereunder by making lease payments. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 953–54 (Tex. 1992).

WHEREFORE, premises considered, Doctors Hospital 1997 LP d/b/a United Memorial Medical Center respectfully requests that the Court grant UMMC's Motion for Summary Judgment, deny the Trustee's Motion for Partial Summary Judgment, and Defendant all such further relief which is just.

Respectfully Submitted,

**Pendergraft & Simon, LLP**

/s/ *William P. Haddock*
Leonard H. Simon
  Texas Bar No. 18387400
  S.D. Tex. Adm. No. 8200
William P. Haddock
  Texas Bar No. 00793875
  S.D. Tex. Adm. No. 19637
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Doctors Hospital 1997 LP d/b/a United Memorial Medical Center*

## Certificate of Service

I hereby certify that a true and correct copy of the above Defendant's Amended Reply to Trustee's REsponse to UMMC's Motion for Summary Judgment has been served on the following counsel/parties of record in accordance with the Fed. R. Bankr. P. 7005 and local rules for ECF service on this 13th day of April, 2023:

Counsel/parties appearing electronically via ECF:

Miriam Goot, Counsel for Plaintiff

/s/ *William P. Haddock*
William P. Haddock