United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 04, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-35493 |
| 1960 FAMILY PRACTICE, P.A., | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| _____ | § | |
| EVA S. ENGELHART, CHAPTER 7 | § | |
| TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-3126 |
| | § | |
| DOCTORS HOSPITAL 1997, L.P., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are cross motions for summary judgment under Fed. R. Civ. P. 56. Eva S. Engelhart, Chapter 7 Trustee, seeks entry of a partial summary judgment on her breach of contract claim against Doctors Hospital 1997 LP d/b/a United Memorial Medical Center. Doctors Hospital 1997 LP d/b/a United Memorial Medical Center seeks entry of summary judgment on its four affirmative defenses, to wit: failure of consideration; breach of contract - excuse; impossibility of performance; and failure to mitigate damages. On August 2, 2023, the Court held a hearing on the matter. For all of the reasons discussed *infra*, Doctors Hospital 1997 LP d/b/a United Memorial Medical Center's motion for summary judgment is denied in its entirety and Eva S. Engelhart, Chapter 7 Trustee's motion for summary judgment is granted in its entirety.

### I.  BACKGROUND & UNDISPUTED FACTS

1. On August 16, 2019, 1960 Family Practice, P.A. ("*Debtor*") executed an Asset Purchase Agreement ("*APA*") and sold its assets to UMMC for $500,000.00.[1]

2. Ravishanker Mallapuram ("*Mallapuram*") was involved in negotiating the APA on behalf of UMMC.[2]

3. Nobody other than Mallapuram at Doctors Hospital 1997 LP d/b/a United Memorial Medical Center ("*UMMC*" or "*Defendant*") was involved in negotiation the APA on behalf of UMMC.[3]

4. Mallapuram signed the APA as the managing director on behalf of UMMC.[4]

5. Dr. Huong Le ("*Le*") signed the APA on behalf of Debtor.[5]

6. The following testimony took place during Mallapuram's deposition:[6]

> **Trustee's Counsel:** And at this time in August of 2019, did UMMC have a lawyer review this Asset Purchase Agreement?
>
> **Mallapuram:** I don't think so.
>
> **Trustee's Counsel:** Why not?
>
> **Mallapuram:** Once we went one time, we agreed like what we wanted to do. And the document was prepared by Dr. Le's office. I think Stacy is the one who prepared the document. And she sent it and we looked at it and we signed it. We really didn't go through each and everything, to be honest with you.
>
> **Trustee's Counsel:** So did you ever make any revisions to the agreement, or did Dr. Le just hand it to you guys and you signed it?
>
> **Mallapuram:** She sent it over to us and then we looked at mainly the information here and the price and we signed it.
>
> **Trustee's Counsel:** Okay. And so you didn't do any due diligence before you signed this document?
>
> **Mallapuram:** No.

---

[1] ECF No. 17 at 4, ¶ 1 (citing ECF No. 17-5 (Asset Purchase Agreement); ECF No. 17-6 (Complaint filed by Trustee – Page 3, Paragraph 7); ECF No. 17-7; (Answer to Complaint at 3, ¶ 7); ECF No. 17-8 (Mallapuram Depo at 49, lines 4-7 and 16-20); ECF No. 17-14 (UMMC Responses to Landlord's Interrogatory #3)).

[2] ECF No. 17 at 4, ¶ 2 (citing ECF No. 17-6 (Complaint at 3, ¶ 8) and ECF No. 17-7 (Answer at 3, ¶ 8)).

[3] ECF No. 17 at 4, ¶ 3 (citing ECF No. 17-14 (UMMC Response to Interrogatory #3).

[4] ECF No. 17 at 4, ¶ 4 (citing ECF No. 17-6 (Complaint at 3, ¶ 9); ECF No. 17-7 (Answer at 3, ¶ 9); ECF No. 17-5 (APA – at 17– signature page); and ECF No. 17-8 (Mallapuram Deposition at 50, Lines 3-5).

[5] ECF No. 17 at 4, ¶ 5 (citing ECF No. 17-5 (APA at 17 – signature page); ECF No. 17-9 (Dr. Le Deposition 7-18-2022 at 18, Lines 23-25).

[6] ECF No. 17 at 4-5, ¶ 6 (citing ECF No. 17-8 (Mallapuram Deposition at 51, Lines 1-22).

**Trustee's Counsel:** Okay. Did you have anyone for UMMC do any due diligence related to the asset purchase agreement?

**Mallapuram:** No, I don't think so.

7. Pursuant to the APA: (i) UMMC is defined as the Purchaser;[7] (ii) the Closing Date is defined as September 1, 2019;[8] and (iii) "Practices" is defined to include the 20320 Northwest Freeway, Houston, TX 77065 ("*Northwest Property Leases*").[9]

8. Section 2.3(a) of the APA states, "Purchaser agrees to pay and satisfy all Liabilities of Practices incurred after the Closing Date."[10]

9. The Northwest Property Leases was specifically included in the APA.[11]

10. The Northwest Property Leases were not excluded from the APA.[12]

11. Mallapuram signed a sworn declaration where he stated under penalty of perjury that as part of the consideration for the purchase of the Debtor's assets, UMMC agreed to be liable for the Debtor's lease obligations for the Northwest Property Leases between the Debtor and its landlord.[13]

12. UMMC did not take any affirmative steps to exclude the Northwest Property Leases from the APA.[14]

13. In addition to paying and satisfying the Debtor's liabilities, UMMC was also required to pay the Debtor $500,000.00 per the APA.[15]

14. In exchange for $500,000.00 and the agreement to pay satisfy the Debtor's liabilities, the Debtor was required to transfer its assets to UMMC.[16]

---

[7] ECF No. 17 at 5, ¶ 7 (citing ECF No. 17-5 (APA at 1, ¶ 1); ECF No. 17-6 (Complaint at 3, ¶ 12(a)); and ECF No. 17-7 (Answer at 3, ¶12).

[8] ECF No. 17 at 5, ¶ 7 (citing ECF No. 17-5 (APA at 6, ¶ 3.1); ECF No. 17-6 (Complaint at 3, ¶ 12(b)); and ECF No. 17-7 (Answer at 3, ¶ 12).

[9] ECF No. 17 at 5, ¶ 7 (citing ECF No. 17-5 (APA at 1, Second Paragraph); ECF No. 17-6 (Complaint at 3, ¶ 12(b)); and ECF No. 17-7 (Answer at 3, ¶ 12).

[10] ECF No. 17 at 5, ¶ 8 (citing ECF No. 17-5 (APA at 4, ¶ 2.3(a)); ECF No. 17-6 (Complaint at 3, ¶ 10); and ECF No. 17-7 (Answer at 3, ¶ 10).

[11] ECF No. 17 at 5, ¶ 9 (citing ECF No. 17-5 (APA at 1, ¶ 2 lists 20320 Northwest Freeway property as a "Practice Location"); and ECF No. 17-8 (Mallapuram Deposition at 77, Lines 15-17).

[12] ECF No. 17 at 5, ¶ 10 (citing ECF No. 17-8 (Mallapuram Deposition at 77, Lines 18-20)..

[13] ECF No. 17 at 5, ¶ 11 (citing ECF No. 17-22 – Mallapuram Affidavit, ¶ 2.

[14] ECF No. 17 at 6, ¶ 12 (citing ECF No. 17-8 (Mallapuram Deposition at 77, Lines 21-24).

[15] ECF No. 17 at 6, ¶ 13 (citing ECF No. 17-5 (APA at 4, ¶ 2.4 (a).

[16] ECF No. 17 at 6, ¶ 14 (citing ECF No. 17-5 (APA – ¶¶ 2.3(a) and 2.4(a)).

15. Le testified that she entered into the APA on behalf of the Debtor because UMMC agreed to be liable for the Debtor's lease obligations.[17]

16. It was the Debtor's understanding when the APA was negotiated that UMMC was going to pay the liabilities for the Debtor's lease obligations.[18]

17. Pursuant to the APA, on August 19, 2019, UMMC paid the Debtor $500,000.00.[19]

18. Pursuant to the APA, the Debtor transferred its assets to UMMC.[20]

19. Pursuant to the APA, UMMC was required to begin making payments on the Northwest Property Leases on September 1, 2019.[21]

20. On September 5, 2019, UMMC made the first payment to WFMC 2016-C 34 Northwest Freeway, LLC (the "*Landlord*") in the amount of $70,607.37 for the September 2019 payment for the Northwest Property Leases ("*September Payment*").[22]

21. On October 11, 2019, UMMC made the second payment to the Landlord in the amount of $31,647.20 for the October 2019 payment for the Northwest Property Leases ("*October Payment*").[23]

22. UMMC did not make any other payments to the Landlord besides the September Payment and the October Payment.[24]

23. The APA did not include any provision that UMMC would not be required to pay the Debtor's liabilities on the Northwest Property Leases if the Landlord refused to have the Northwest Property Leases assigned or sublet.[25]

---

[17] ECF No. 17 at 6, ¶ 15 (citing ECF No. 17-10 (Dr. Le Depo 6-7-2022 at 119, Lines 8-18; at 137, Lines 14-22; and at 148, Lines 8-20)).

[18] ECF No. 17 at 6, ¶ 16 (citing ECF No. 17-10 (Dr. Le Depo 6-7-2022 at 148, Lines 8-20).

[19] ECF No. 17 at 6, ¶ 17 (citing ECF No. 17-8 (Mallapuram Depo at 87, Lines 5-12); ECF No. 17-11 (Payment from UMMC to Debtor for $500,000).

[20] ECF No. 17 at 6, ¶ 18 (citing ECF No. 17-8 (Mallapuram Depo at 87, Lines 8-16).

[21] ECF No. 17 at 6, ¶ 19 (citing ECF No. 17-5 (APA at 4, ¶ 2.3(a) – Purchaser agrees to pay and satisfy all Liabilities of Practices incurred after the Closing Date. And ¶ 3.1 defines the Closing date as September 1, 2019).

[22] ECF No. 17 at 6, ¶ 20 (citing ECF No. 17-12 (Interrogatory from Trustee to UMMC – Interrogatory #1 and #2); ECF No. 17-13 (UMMC responses to Trustee's Interrogatory No. 1 and No. 2); ECF No. 17-8 (Mallapuram Deposition at 74, Line 21 through  76, Line 24).

[23] ECF No. 17 at 7, ¶ 21 (citing ECF No. 17-12 (Interrogatory from Trustee to UMMC – Interrogatory No. 1 and No. 2); ECF No. 17-13 (UMMC responses to Trustee's Interrogatory No. 1 and No. 2); and ECF No. 17-8 (Mallapuram Deposition at 74, Line 21 through Page 76, Line 24).

[24] ECF No. 17 at 7, ¶ 22 (citing ECF No. 17-8 (Mallapuram Deposition at 76, Lines 25 through Page 77, lines 1-4); ECF No. 17-12 (Interrogatory from Trustee to UMMC – Interrogatory No. 1 and  No. 2); ECF No. 17-13 (UMMC responses to Trustee's Interrogatory No. 1 and No. 2); ECF No. 17-15 (Responses to Request For Admission #10 through 15); ECF No. 17-22 (Mallapuram Affidavit at 2, ¶ 6).

[25] ECF No. 17 at 7, ¶ 25.

24. On November 9, 2020, 1960 Family Practice, P.A. ("*Debtor*") filed for relief under chapter 7 of the United States Bankruptcy Code.[26]

25. On November 9, 2020, Debtor filed its schedules and disclosed an unsecured liability for the Northwest Property Lease obligation owed to the Landlord.[27]

26. Debtor disclosed an accounts receivable from UMMC as an asset on Schedule A/B for payments not paid by UMMC to the Landlord from November 1, 2019 through August, 2020 as required under the APA.[28]

27. On November 10, 2020, Eva S. Engelhart ("*Trustee*") was appointed to serve as the Chapter 7 Trustee and continues to serve in that capacity.[29]

28. On April 14, 2022, The Landlord filed an unsecured proof of claim in the total amount of $1,103.464.59 ("*POC*").[30]

29. On April 25, 2022 Trustee filed her complaint initiating this adversary proceeding asserting two causes of action, to wit: breach of contract and declaratory judgment.[31]

30. On June 13, 2022 Defendant appeared and filed an answer to the Complaint ("*Answer*").[32]

31. On November 14, 2022, UMMC responded to the Trustee's Interrogatories ("*Responses to Interrogatories*").[33]

32. In its Responses to Interrogatories, UMMC asserted that Le is the only person who allegedly requested that the Landlord consent to an assignment or sublease the Northwest Property Leases.[34]

33. On November 29, 2022, fifteen days after UMMC served its Responses to Interrogatories, the Trustee deposed Mallapuram who testified that he was unaware if Le ever reached out to the Landlord requesting that the Northwest Property Leases could be assigned to UMMC.[35]

34. On November 29, 2022, UMMC objected to the Landlord's POC.[36]

---

[26] Citations to Debtors' Bankruptcy case, 20-31585, shall take the form "Bankr. ECF No. —."  Bankr. ECF No. 1.
[27] ECF No. 17-6 at 5, ¶ 21; ECF No. 17-7 at 4, ¶ 21; ECF No. 17-7 at 55; Creditor 3.33.
[28] ECF No. 17-17, at 14 and 15 – 11/1/2019 through 9/1/2020).
[29] Bankr. ECF No. 2.
[30] ECF No. 17-18; ECF No. 17-6 at 5, ¶ 22; ECF No. 17-7 at 4, ¶ 22; ECF No. 17-22 at 2 ¶ 7.
[31] ECF No. 1.
[32] ECF No. 5.
[33] ECF No. 17 at 7, ¶ 27 (citing ECF No. 17-13).
[34] ECF No. 17 at 7, ¶ 28 (citing Id. at 5, Interrogatory No. 3).
[35] ECF No. 17 at 7, ¶ 29 (citing ECF No. 17-8 at 67, Lines 7-12).
[36] ECF No. 17-19.

35. On December 13, 2022, Trustee filed her Notice of Consent to the entry of final orders by this Court.[37]

36. On December 14, 2022, UMMC filed its Notice of Consent to the entry of final orders by this Court.[38]

37. On January 12, 2023, the Trustee, the Landlord, and UMMC entered into an Agreed Order Resolving Objection to Claim that allowed the Landlord's POC in the total amount of $950,000.00 ("*Agreed Order*").[39]

38. The Agreed Order specifically provides that the Landlord's POC is an allowed unsecured claim in the total amount of $950,000.00 ("*Allowed Claim*").[40]

39. Pursuant to the Agreed Order, all parties "are estopped from challenging the merits or the amount of the Allowed Claim in any pending or future proceeding".[41]

40. On January 17, 2023, UMMC filed its, "Defendant's Motion For Summary Judgment" ("*UMMC's MSJ*")[42]

41. On January 17, 2023 Trustee filed her, "Trustee's Motion For Partial Summary Judgment"[43] ("*Trustee's MSJ*").

42. On January 20, 2023, Trustee filed "Trustee's Response to UMMC's Motion For Summary Judgment" ("*Trustee's Response*").[44]

43. On February 14, 2023, UMMC filed "Defendant's Response To Plaintiff's Motion For Partial Summary Judgment And Reply To Plaintiff's Response To Defendant's Motion For [Sic] Summaary Judgment"[45] ("*Combined Response*").

44. On February 19, 2023, Trustee filed "Trustee's Reply To UMMC's Response To The Trustee's Motion For Partial Summary Judgment."[46]

45. On February 28, 2023, UMMC filed "Defendant's Sur-Reply To Trustee's Reply To Defendant's Response To Trustee's Motion For Summary Judgment".[47]

---

[37] ECF No. 14.
[38] ECF No. 15.
[39] ECF No. 17 at 7, ¶ 36 (citing ECF No. 17-20; ECF No. 17-22, at 3, ¶ 8).
[40] ECF No. 17-19.
[41] *Id.*
[42] ECF No. 16.
[43] ECF No. 17.
[44] ECF No. 19.
[45] ECF No. 25.
[46] ECF No. 26.
[47] ECF No. 34.

46. On April 13, 2023, UMMC filed "Defendant's Amended Response To Plaintiff's Motion For Partial Summary Judgment, ("*UMMC's Amended Response*")"[48] and "Defendant's Amended Reply To Trustee's Response To UMMC's Motion For Summary Judgment" ("*UMMC's Amended Reply*").[49]

47. On April 16, 2023, Trustee filed "Trustee's Reply To UMMC's Response To The Trustee's Motion For Partial Summary Judgment" ("*Trustee's Reply*"), which inter alia, requested that Defendant's Amended Response be struck ("*Motion to Strike*").[50]

48. On August 2, 2023, the Court held a hearing ("*Hearing*") on the motions.

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334(b), which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11."[51]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[52]

"Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]."[53]  "Arising in" jurisdiction refers to proceedings that are not based on any provision of the Bankruptcy Code, but nonetheless "would have no existence outside of the bankruptcy."[54]  Taken together, proceedings that are "arising under" or "arising in" bankruptcy comprise this Court's core jurisdiction.[55]  This Court may also exercise jurisdiction over proceedings that "relate to" a case under the Bankruptcy Code.[56]  A proceeding is "related to" a case under the Bankruptcy Code "when the outcome of that proceeding could conceivably

---

[48] ECF No. 49.
[49] ECF No. 50.
[50] ECF No. 51.
[51] 28 U.S.C. § 1334(b).
[52] 28 U.S.C. § 157(a). *See also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[53] *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 267 (5th Cir. 2005).
[54] *Matter of Wood,* 825 F.2d 90, 97 (5th Cir. 1987).
[55] *Id.*
[56] 11 U.S.C. § 157(c)(1); 28 U.S.C. § 1334(b).

have any effect on the estate being administered in bankruptcy."[57]  In other words, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[58]

Here, this Adversary Proceeding concerns breach of contract and declaratory judgment claims brought by the Trustee under Texas law and 28 U.S.C. § 2201 against UMMC.[59]  Neither of  these claims arise under Title 11 nor do they arise only in in the context of bankruptcy.[60]  However, this Court has related to jurisdiction over this proceeding because disposition of these claims will alter the rights, liabilities, options, and/or freedom of action of the Debtor, and thus could conceivably have an effect on the administration of the bankruptcy estate.

This Court may only hear a case in which venue is proper.[61]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's bankruptcy case is pending in this Court, and thus venue is proper in this case.[62]

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[63]  While the matters pending before the Court in this case are non-core, both parties have consented to the entry

---

[57] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted).
[58] *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988)). *See also, e.g.*, *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir. 2007); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (holding that "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate.").
[59] *See* ECF No. 1.
[60] *See id.*
[61] 28 U.S.C. § 1408.
[62] *See* Bankr. ECF No. 1.
[63] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1938–40, 191 L.Ed.2d 911 (2015).

of final orders and judgments by this Court.[64]  Thus, this Court has constitutional authority to enter

a final judgment.  However, should the Honorable United States District Court determine that the

Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests

that the Honorable United States District Court convert this Memorandum Opinion into a Report

and Recommendation.

### III.   ANALYSIS

Pending before the Court are two matters: (1) Trustee's MSJ, and (2) UMMC's MSJ.  The

Court will consider each in turn.

### A.  Rule 56 Standard

Federal Rule of Civil Procedure ("*Rule*") 56 permits a party to move for summary

judgment, "identifying each claim or defense—or the part of each claim or defense—on which

summary judgment is sought."[65]  Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7056

incorporates Rule 56 in adversary proceedings.  Rule 56 states that the Court "shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."[66]  Summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."[67]  Courts employing this standard of review

must determine "not merely whether there is a sufficient factual dispute to permit the case to go

forward, but whether a rational trier of fact could find for the nonmoving party based upon

---

[64] ECF Nos. 14, 15.
[65] FED. R. CIV. P. 56(a) (emphasis added).
[66] *Id.*
[67] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

evidence before the court."[68]  To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law.[69]  A material fact is one "that might affect the outcome of the suit under the governing law."[70]  A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving parties.[71]

Rule 56 creates a shifting burden.  Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[72]  If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.[73]  When there is no genuine issue for trial, the Court should grant summary judgment.[74]  In determining whether summary judgment is appropriate, a court is not to weigh evidence, assess its probative value, or resolve factual disputes,[75] but the facts must be reviewed with all "justifiable inferences" drawn in non-movants' favor.[76]  Nevertheless, factual controversies will be resolved in non-movants' favor "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."[77]  If, however, the record could not lead a rational trier of fact to find for non-movants, summary judgment is appropriate.[78]  While the Court may consider other materials in the record, it need only consider those actually cited.[79]  Where the facts are undisputed and only questions of law

---

[68] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

[69] *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).

[70] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998).

[71] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[72] *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).

[73] *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

[74] *Id.*

[75] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).

[76] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

[77] *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).

[78] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986).

[79] *Id.* (citing FED. R. CIV. P. 56(c)(3)).

exist, a court must apply the appropriate law to the facts to determine whether the moving party is entitled to judgment as a matter of law.[80]

As a preliminary matter, before turning to Trustee's MSJ and Defendant's MSJ, the Court must consider a motion to strike raised in Trustee's Reply.

## A.  Trustee's Motion to Strike

Trustee requests in its Reply "that UMMC's Amended Response be stricken for UMMC's blatant failure to comply with this Court's Order[81] to Amend."[82]  The Court's Order clearly stated that:

> Doctors Hospital 1997 LP d/b/a United Memorial Medical Center ("UMMC") shall have until April 13, 2023 to file a separate (1) responsive brief to "Trustee's Motion for Partial Summary Judgement"; and a separate (2) reply brief to "Trustee's Response to UMMC's Motion for Summary Judgment."

> Doctors Hospital 1997 LP d/b/a United Memorial Medical Center will be limited to factual pleadings and arguments raised in "Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Reply to Plaintiff's response to Defendant's Motion for Summary Judgment" and may not incorporate any substantive changes to the separate pleadings.

> Failure by Doctors Hospital 1997 LP d/b/a United Memorial Medical Center to file a separate (1) responsive brief to "Trustee's Motion for Partial Summary Judgement"; or a separate (2) reply brief to "Trustee's Response to UMMC's Motion for Summary Judgment" may result in in the issuance of further orders including striking "Defendant's Response to Plaintiff's Motion for Partial Summary Judgment and Reply to Plaintiff's response to Defendant's Motion for Summary Judgment."[83]

In its Amended Response, UMMC failed to comply with this Court's Order in two ways:

First, UMMC continues to argue both pleadings in violation of the Order to Amend.  Specifically,

---

[80] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) ("Summary judgment is appropriate where only issue before court is pure question of law."); *see Barnes v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 51218, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").
[81] ECF No. 51-6.
[82] ECF No. 51 at 3, ¶ 12.
[83] ECF No. 47.

in Paragraph 2 of its Amended Response, UMMC asserts five separate reasons why this Court should both (1) grant UMMC's MSJ, and (2) deny the Trustee's MSJ.[84]  Second, UMMC made substantive changes to the Combined Response by adding 42 paragraphs under Section III of its Amended Response which were not included in its Combined Response.[85]  This Court clearly stated that failure to comply with the Court's Order to Amend may result in striking UMMC's response.[86]

Accordingly, Trustee's request that UMMC's Amended Response be stricken for failure to comply with this Court's Order to Amend is granted.

The Court will next consider UMMC's MSJ.

## B.  UMMC's Motion for Summary Judgment

UMMC requests summary judgment on four affirmative defenses: (1) failure of consideration; (2) excuse; (3) impossibility of performance; and (4) failure to mitigate damages.[87] The Court will consider each in turn.

### 1.  Failure of Consideration and Excuse of Performance

UMMC's failure of consideration and excuse of performance[88] affirmative defenses were not pled in Defendant's Answer and Trustee has objected to Defendant now raising these affirmative defenses.[89]  As the Fifth Circuit has noted, a defendant "must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."[90]  Failure to plead an affirmative defense constitutes waiver of

---

[84] ECF No. 49 at 2, ¶ 2.
[85] *Compare* ECF No. 25 *with* 49.
[86] ECF No. 47.
[87] ECF No. 16 at 6-7, ¶¶ 16-19.
[88] UMMC incorrectly titles its excuse of performance defense as "breach of contract" in its Motion.
[89] ECF No. 19 at 3, ¶¶ 4-6 at 9, ¶¶ 48-49. *See also* ECF No. 5.
[90] *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

that defense.[91]  Furthermore, this Court has already denied UMMC's motion for leave to amend its answer to include new affirmative defenses.[92]  This Court finds that UMMC failed to adequately plead its failure of consideration and excuse of performance defenses in its Answer.[93]  Thus, they are waived.

Accordingly, UMMC's affirmative defenses of (1) failure of consideration and (2) excuse of performance are dismissed.

### 2. Impossibility of Performance

UMMC next seeks summary judgment on its affirmative defense of impossibility of performance.[94]  The Court first notes that UMMC's entire argument spans three sentences, contains no legal analysis, and ends with a bald unexplained citation to *Centex Corp. v. Dalton*.[95]  UMMC asserts that performance was impossible under the contract because neither the Landlord nor the Debtor obtained consent to assign the Leases to UMMC and the Debtor occupied the premises making it impossible for UMMC to occupy such premises.[96]  First, UMMC's uncritical reliance on *Centex* is entirely misplaced.  *Centex* stands for the proposition that changes in the law or governmental regulation that would prevent performance under an otherwise valid contract may give rise to a valid impossibility defense.[97]  This is not what has occurred in this case and UMMC makes no such argument.[98]

Generally, impossibility of performance applies in three instances: (1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing

---

[91] *Id.*
[92] ECF No. 33.
[93] *See* ECF No. 5.
[94] ECF No. 16.
[95] ECF No. 16 at 7, ¶ 18 (citing 840 S.W.2d 952, 953–54 (Tex. 1992)).
[96] *Id.*
[97] *Centex*, 840 S.W.2d at 955-56.
[98] *See* ECF No. 16 at 7, ¶ 18.

necessary for performance; and, as discussed, (3) prevention by governmental regulation.[99]  Here, UMMC did not allege in its Answer or in its MSJ that it was impossible for it to perform under the APA due to death, destruction, or governmental regulation.[100]

Accordingly, summary judgment is denied as to UMMC's affirmative defense of impossibility of performance.

### 3.  Failure to Mitigate Damages

UMMC's last seeks summary judgment on its affirmative defense of failure to mitigate damages.[101]  UMMC argues that the Landlord failed to mitigate damages by failing to consent to the assignment of the Leases.[102]  However, in its Answer UMMC argues that the Plaintiff failed to mitigate damages, not the Landlord.[103]  Because it was unpled, UMMC's new arguments as they pertain to the Landlord are subject to waiver as discussed *supra*.[104]  Furthermore, UMMC is estopped from challenging the amounts of the Landlord's Allowed Claim as set forth in the Agreed Order.[105]  UMMC presents no evidence or arguments in its MSJ with respect to its pled arguments that the Trustee had a duty to mitigate damages.[106]

Accordingly, summary judgment is denied as it pertains to UMMC's affirmative defense of failure to mitigate damages.

Next, the Court will consider Trustee's MSJ.

## C.  Trustee's Motion for Summary Judgment

---

[99] *Tractebel Energy Mktg., Inc. v. E.I. Du Pont de Nemours & Co.,* 118 S.W.3d 60, 64 n. 6 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).
[100] *See* ECF Nos. 5, 16.
[101] ECF No. 16.
[102] ECF No. 16 at 7, ¶ 19.
[103] ECF No. 5.
[104] *Woodfield,* 193 F.3d at 362.
[105] ECF No. 17-20; ECF No. 17-22, at 3, ¶ 8.
[106] See ECF No. 16

Trustee seeks summary judgment on her (1) breach of contract claim and (2) partial summary judgment that she is entitled to attorney's fees pursuant to Texas Civil Practices and Remedies Code § 38.001, with the amount of fees to be determined at trial.[107]  Trustee additionally seeks summary judgment and dismissal of each of UMMC's pled affirmative defenses: (3) mistake (mutual and unilateral), (4) impossibility of performance, and (5) failure to mitigate damages.[108] The Court will consider each in turn.

**1.    Breach of Contract Claim**

To establish a breach of contract under Texas law, Trustee must prove the following elements: (i) there was valid contract between the Debtor and the Defendant; (ii) there was performance or tendered performance by the Debtor; (iii) there was a breach of contract by the Defendant; and (iv) there were damages to the Debtor as a result of the breach.[109]  When the terms of a contract are clear and the facts surrounding the breach are undisputed, the issue of whether the facts show breach are decided as a matter of law.[110]

Here, the terms of the contract are clear and all of the material facts have been stipulated to and are undisputed.  Thus, the Court may decide Trustee's breach of contract claim as a matter of law.  First, UMMC has stipulated to and does not dispute that the APA is a valid contract and that Debtor performed under the APA by transferring its assets to UMMC.[111]  Next, UMMC has also stipulated that as part of the consideration for the purchase of Debtor's assets, UMMC agreed to be liable for and make the lease payments on the Northwest Property Leases.[112]  UMMC also stipulates that after making the September and October payments, it did not make any more of the

---

[107] ECF No. 17.

[108] ECF No. 17. *See also* ECF No. 5.

[109] *Villarreal v. Wells Fargo Bank, N.A.,* 814 F.3d 763, 766 (5th Cir. 2016).

[110] *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

[111] ECF No. 43 at 10, ¶ 73; *Id.* at 4, ¶ 17-19, 21.

[112] *Id.* at 6, ¶ 31-32.

lease payments to the Landlord as required under the APA.[113]  Thus, because UMMC stipulated that it was obligated to make the lease payments under the APA[114] and that it failed to do so after making the initial September and October payments,[115] the Court concludes that UMMC did breach the APA.

Last, damages resulting from this breach are also undisputed.  Debtor remains the primary obligor on the Northwest Property Leases,[116] and as a result of the Agreed Order the Landlord has an Allowed Claim against the estate in the amount of $950,000.00 for Debtor's failure to make the lease payments that UMMC agreed to assume under the APA.[117]  Per the terms of the Agreed Order, UMMC has agreed and is estopped from further disputing that $950,000.00 are the damages resulting from the failure to tender the remaining lease payments to the Landlord.[118]  Thus, this Court concludes that there is no genuine dispute of material fact and the Trustee has carried her burden to establish each element of her breach of contract claim against UMMC.

Accordingly, the Court grants summary judgment on Trustee's breach of contract claim against UMMC in the amount of $950,000.00.

Next, the Court will consider if partial summary judgment is appropriate on Trustee's request for attorney's fees.

### 2. Attorney's Fees

Trustee requests an award of attorney's fees pursuant to Section 38.001 of the Texas Civil Practices and Remedies Code.[119]  Section 38.001(b)(8), in relevant part, provides: "A person may recover reasonable attorney's fees from an individual or organization… in addition to the amount

---

[113] *Id.* at 7, ¶ 41-42.
[114] ECF No. 43 at 6, ¶ 31-32.
[115] *Id.* at 7, ¶ 41-42.
[116] *Id.* at 6, ¶ 29.
[117] Bankr. ECF No. 120.
[118] *Id.*
[119] ECF No. 1 at 6, ¶ 30; ECF No. 17 at 11, ¶¶ 50-53.

of a valid claim and costs, if the claim is for… an oral or written contract."[120]  Since this Court has already granted summary judgment on Trustee's breach of contract claim against UMMC, Trustee is also entitled pursuant to § 38.001(b)(8) to an award of reasonable attorney's fees and costs, with the amount to be determined at trial.[121]

Accordingly, Trustee is entitled to reasonable and necessary attorney's fees and costs for UMMC's breach of the APA.

Next, the Court will consider if summary judgment is appropriate on UMMC's pled affirmative defenses.

### 3.  UMMC's Pled Affirmative Defenses

Trustee next seeks summary judgment on each of UMMC's three pled affirmative defenses: (i) failure to mitigate damages,[122] (ii) impossibility of performance,[123] (iii) mistake (mutual and unilateral).[124]  The Court will consider each in turn.

### i.  Failure to Mitigate Damages

UMMC pleads in its Answer that Trustee failed to mitigate damages with respect to the Leases because "the Plaintiff has not objected to the proof of claim filed by the landlord, nor has the Plaintiff asserted any complaint against the landlord for unreasonably withholding its consent to the assignment of the leases."[125]  Trustee argues that UMMC's failure to mitigate damages affirmative defense should be denied as a matter of law because (1) Chapter 7 Trustees have no duty to mitigate with respect to pre-petition conduct, and (2) the terms of the Agreed Order preclude UMMC's failure to mitigate defense.[126]

---

[120] Tex. Civ. Prac. & Rem. Code § 38.001(b)(8).
[121] *See id.*
[122] ECF No. 5 at ¶ 39.
[123] *Id*, ¶ 39.
[124] ECF No. 5 at 5, ¶ 38.
[125] ECF No. 5 at 6, ¶ 40.
[126] ECF No. 17 at 11-12.

As a preliminary matter, the Court notes that while Trustee has treated UMMC's mitigation of damages defense as being directly asserted against her, as pled, UMMC asserts this defense against the "Plaintiff."[127]  While the Trustee is the Plaintiff in this case, normally when a Chapter 7 trustee brings a claim derivatively on behalf of the estate, the trustee is subject to any affirmative defenses that could have been raised against the debtor.[128]  Here however, as pled, UMMC asserts its mitigation of damages defense directly against the Trustee.[129]  First, UMMC pleads that the Plaintiff failed to mitigate by not filing a claims objection or filing suit against the Landlord.[130]  Post-petition, only the Trustee could assert a lawsuit against the Landlord, as any claim that existed would have been held by the estate.  Furthermore, in its pre-trial statement, UMMC also stipulates and characterizes its mitigation defense as, "Trustee's Failure to Mitigate Damages."[131]  UMMC has also at no point disputed or otherwise contested Trustee's characterization of UMMC's failure to mitigate defense as being asserted against the Trustee directly.[132]  As such, the Court also treats and views UMMC's mitigation defense as being directly asserted against the Trustee.First, the Court notes that Trustee provides no citation or support for her assertion that Chapter 7 Trustees have no duty to mitigate damages in her MSJ.[133]  Trustee and UMMC do assert in their joint pre-trial statement, as a disputed issue of law, that Tex. Prop. Code § 91.006 precludes UMMC's argument that the Trustee had a duty to mitigate damages under the APA.[134]  Tex. Prop. Code § 91.006(a) provides, "[a] landlord has a duty to mitigate damages if a tenant abandons the leased

---

[127] ECF No. 17 at 11-12; ECF No. 5.

[128] *In re Segerstrom*, 247 F.3d 218, 224 (5th Cir. 2001) ("When a trustee prosecutes a right of action derived from the debtor, the trustee stands in the shoes of the debtor… [t]he trustee is subject to all defenses available against the debtor, and must prove all elements that the debtor herself would be required to prove.").

[129] *See* ECF No. 5.

[130] *Id.*

[131] ECF No. 43 at 10-11, ¶ 73(c).

[132] *See* ECF No. 25.

[133] *See id.* at 12, ¶ 60.

[134] ECF No. 43 at 19.

premises in violation of the lease."[135]  The Court fails to see how this provision of the Texas property code, which on its face applies only to landlords, supports Trustee's position that she had no duty to mitigate damages under the APA following UMMC's breach.[136]  As such, this argument fails.

The Trustee next argues that "UMMC's argument that the Trustee failed to mitigate damages by not objecting to the Landlord's POC or pursuing the Landlord is not a valid argument as this Court previously entered an Agreed Order (signed by UMMC) that specifically stated that the Parties are estopped from challenging the merits or the amount of the Landlord's Allowed proof of claim in any pending or future proceeding…"[137]  The terms of the Agreed Order are as follows:

> **ORDERED** that the Proof of Claim No. 41 filed by WFCM 2016-C34 Northwest Freeway, LLC ("WFCM") is an allowed unsecured claim in the total amount of $950,000.00 ("Allowed Claim"), and it is further

> **ORDERED** that except as provided in this Agreed Order, the Parties are estopped from challenging the merits or the amount of the Allowed Claim in any pending or future proceedings. Notwithstanding the above, it is further

> **ORDERED** that this Agreed Order is without prejudice, and shall not be subject to res judicata or collateral estoppel, with respect to Doctors Hospital 1997 d/b/a United Memorial Medical Center's ("UMMC") current affirmative defenses in Adversary No. 22-03126 which include: (1) Mistake, (2) Impossibility of Performance, and (3) Failure to Mitigate Damages.[138]

Contrary to Trustee's assertions, the Agreed Order expressly states in the very next sentence that the order "*shall not* be subject to res judicata or collateral estoppel" with respect to UMMC's current affirmative defenses.[139]  Per the terms of the Agreed Order, the Landlord has a

---

[135] Tex. Prop. Code § 96.006.
[136] *Id.*
[137] ECF No. 17 at 12, ¶ 12.
[138] Bankr. ECF No. 120.
[139] *Id.* (emphasis added).

$950,000.00 claim against the estate.[140]   However, the parties also specifically agreed that UMMC's current affirmative defenses, including UMMC's failure to mitigate defense, would not be subject to res judicata or collateral estoppel.[141]   Thus, UMMC is not precluded from arguing that the Trustee failed to mitigate damages.[142]   However, as pled, UMMC's mitigation defense still fails as a matter of law.

Under Texas law, "[t]he mitigation-of-damages doctrine requires an injured party, following a breach, to exercise reasonable care to minimize his damages if it can be done with slight expense or reasonable effort."[143]   UMMC does not cite, nor has this Court found, a Texas case that requires a plaintiff, much less a Chapter 7 Trustee, to initiate litigation or a claims objection process to satisfy its mitigation of damage obligations.   Furthermore, as discussed, the duty to mitigate damages in Texas applies to the injured party.[144]   Here, it is the Debtor, not the Chapter 7 Trustee, who is the injured party.   Thus, the Court concludes as a matter of law that the Chapter 7 Trustee does not have a duty to mitigate damages by objecting to the Landlord's proof of claim or initiating an adversary against the Landlord as pled by UMMC.

Accordingly, summary judgment is granted and UMMC's affirmative defense of failure to mitigate damages is dismissed.

### ii.   Impossibility of performance

Trustee next seeks summary judgment on UMMC's impossibility of performance affirmative defense.[145]   In its Answer, UMMC pled that "[t]he lease agreements what are at the core of this adversary proceeding cannot be assigned—nor can a sublease be executed—without

---

[140] *Id.*

[141] Bankr. ECF No. 120.

[142] *See id.*

[143] *Bro-Tech Corp. v. Purity Water Co. of San Antonio*, 681 F. Supp. 2d 791, 804 (W.D. Tex. 2010) (citing *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.1995)).

[144] *Id.*

[145] ECF No. 17.

the landlord's consent. Here, the landlord's consent to the assignment or sublease of the office space was denied and UMMC could not lawfully assume the leases or occupy the leases premises."[146]   As discussed *supra*, the affirmative defense of impossibility of performance generally applies in three instances: (1) the death or incapacity of a person necessary for performance, (2) the destruction or deterioration of a thing necessary for performance; and (3) prevention by governmental regulation.[147]  Here, UMMC did not allege in its Answer that it was impossible for it to perform under the APA due to death, destruction or governmental regulation.[148] Thus, there is no dispute of material fact and UMMC's defense fails as a matter of law.

Accordingly, summary judgment is granted and UMMC's second affirmative defense of impossibility of performance is dismissed.

### iii.    Mistake

Last, Trustee seeks summary judgment on UMMC's mistake defense.[149]  In its Answer, UMMC pleads:

> Section 2.3 of the APA should not be enforced as the Plaintiffs seeks due to mistake. The leases described in this Adversary Proceeding should not have been included in Page 6 of 7 those liabilities and contractual obligations that UMMC was required to assume under the APA. This mistake was mutual. Alternatively, subject leases should be excluded from Section 2.3 of the APA due to a unilateral mistake that occurred despite UMMC's ordinary care in negotiating, drafting, and/or reviewing the APA, and it would be unconscionable to enforce the lease obligations for office space where UMMC never took possession or control.[150]

Essentially, UMMC is arguing that there was either a mutual mistake by both the Debtor and UMMC for including the Northwest Property Leases as a liability to be paid by UMMC in the

---

[146] ECF No. 5 at 6, ¶ 39.
[147] *Tractebel Energy Mktg., Inc. v. E.I. Du Pont de Nemours & Co.,* 118 S.W.3d 60, 64 n. 6 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).
[148] ECF No. 5.
[149] ECF No. 17.
[150] ECF No. 5.

APA, or alternatively that only UMMC was mistaken after having reviewed the APA.[151]   The Court will consider each argument in turn.

### a. Mutual mistake

Pursuant to the doctrine of mutual mistake, when parties to an agreement have contracted under a misconception or ignorance of a material fact, the agreement will be avoided.[152] The question of mutual mistake is determined not by self-serving subjective statements of the parties' intent, which would necessitate trial to a jury in all such cases, but rather solely by objective circumstances surrounding execution of the contract.[153]

Here, there were two parties to the APA – the Debtor and UMMC.  Trustee argues that Debtor did not enter into the APA under any misconception or ignorance that UMMC was to pay for all of the Debtor's liabilities, including the Northwest Property leases.[154]  In support, Trustee points to two pieces of summary judgment evidence: First, Trustee points to deposition testimony by Le, Debtor's president who signed the APA on its behalf, who testified that she entered into the APA on behalf of the Debtor because UMMC agreed to be liable for the Debtor's lease obligations.[155]  Le testified in her deposition that it was her understanding when the APA was negotiated that UMMC was going to pay the liabilities for the Debtor's lease obligations.[156] Second, Trustee points to Debtor's sworn Schedule A/B that disclosed an accounts receivable from UMMC for the specific lease payments that UMMC should have paid the Landlord for the Northwest Property Leases pursuant to the APA.[157]

---

[151] *See id.*
[152] *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n,* 300 S.W.3d 746, 751 (Tex. 2009).
[153] *Id.*
[154] ECF No. 17.
[155] ECF No. 17-10 (Dr. Le Deposition 6-7-2022 - Page 119, Lines 8-18; Page 137, Lines 14-22; and Page 148, Lines 8-20))
[156] ECF No. 17-10 (Dr. Le Deposition 6-7-2022 - Page 148, Lines 8-20)
[157] ECF No. 17-7.

As discussed, Rule 56 creates a shifting burden.  Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[158]  If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.[159]  UMMC, however, fails to respond at all to this argument, much less point to any evidence in the record that might create a genuine issue of material fact.  Thus, in light of the summary judgment evidence presented by the Trustee demonstrating that there was no misconception or ignorance from Debtor that the Northwest Property Leases were included in the APA, and the lack of any evidence to the contrary from UMMC, the Court finds that no rational trier of fact could find for UMMC on its mutual mistake affirmative defense.

Accordingly, summary judgment is granted and UMMC's mutual mistake affirmative defense is dismissed.

### b.  Unilateral mistake

Next, Trustee seeks summary judgment on UMMC's unilateral mistake affirmative defense.[160]  As discussed, UMMC pleads:

> Alternatively, subject leases should be excluded from Section 2.3 of the APA due to a unilateral mistake that occurred despite UMMC's ordinary care in negotiating, drafting, and/or reviewing the APA, and it would be unconscionable to enforce the lease obligations for office space where UMMC never took possession or control.[161]

Generally, a mistake by one party to an agreement will not be grounds for equitable relief.[162]  Equitable relief may be granted for a unilateral mistake when (1) the mistake is of so

---

[158] *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).

[159] *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).

[160] ECF No. 17.

[161] ECF No. 5.

[162] *Cigna Ins. Co. of Texas v. Rubalcada,* 960 S.W.2d 408, 412 (Tex. App. –Houston [1st Dist.] 1998, no pet.).

great a consequence that to enforce the contract would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake occurred despite ordinary care; and (4) the parties can be placed in status quo, *i.e.* the recissions must not prejudice the other party except for the loss of the bargain.[163]

Trustee only needs to show that one of the elements fails in order for the UMMC's affirmative defense to be dismissed.  Here, the Court can begin and end its analysis on element four.  Debtor cannot be placed in status quo as UMMC's failure to pay on the Northwest Property Leases caused Debtor to be liable to the Landlord for $950,000.00.[164]  This is evidenced by the Allowed Claim[165] and the Agreed Order[166] signed by UMMC that confirms that the Debtor owes $950,000.00 to the Landlord and that the parties are estopped from challenging the merits or the amount of the Allowed Claim in any pending or future proceeding.  Thus, UMMC's unilateral mistake affirmative defense fails as a matter of law.

Accordingly, summary judgment is granted and UMMC's affirmative defense of unilateral mistake is dismissed.

### III.   CONCLUSION

A judgment consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[163] *Id.*
[164] ECF No. 120.
[165] ECF No. 17-19.
[166] ECF No. 17-20; ECF No. 17-22, at 3, ¶ 8.

SIGNED August 4, 2023

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge